AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)      ☐ Original  ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California



**LODGED**
CLERK, U.S. DISTRICT COURT
10/28/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ DVE _____ DEPUTY

**FILED**
CLERK, U.S. DISTRICT COURT
10/28/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ KH _____ DEPUTY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>          v.<br><br>ANTHONY EKNOCKEYWY HARRIS,<br><br>                    Defendant. | Case No. 8:22-mj-00697-DUTY |

## CRIMINAL COMPLAINT
## BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, hereby state that the following is true to the best of my knowledge and belief.  On or about the date of **September 1, 2022**, in the County of Orange, in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) | Possession of More than 50 Grams of Methamphetamine with Intent to Distribute |

This criminal complaint is based on these facts:

     *See* the facts set forth in the attached affidavit.

☒ Continued on the attached sheet.

                                  /s/
                            *Complainant's Signature*

          Brian Bonczkiewicz, FBI Task Force Officer
                  *Printed Name and Title*

Attested to by the complainant via telephone in accordance with the requirements of Fed. R. Crim. P. 4.1.

Date:      October 28, 2022                    /s/ Autumn D. Spaeth
                                    *Judge's Signature*

City and State:   Santa Ana, California            Autumn D. Spaeth, U.S. Magistrate Judge
                                    *Printed Name and Title*

AUSA:  Robert J. Keenan  //  Cell:  (213) 393-7762

## <u>AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT</u>

I, Brian Bonczkiewicz, being duly sworn, hereby declare and state as follows:

### <u>TRAINING AND EXPERIENCE</u>

1.    I am an Investigator with the Anaheim Police Department ("APD") and also a federally deputized Task Force Officer ("TFO") presently working with the Federal Bureau of Investigation ("FBI").

2.    I am assigned to the Orange County Violent Crime Task Force ("OCVCTF").  The OCVCTF is composed of FBI and Anaheim Police department Investigators.  The OCVCTF is responsible for, among other things, investigating violations of federal law committed by criminal street gangs, locating and arresting wanted federal fugitives, and other violent criminal offenders in Orange County.  Prior to this assignment with the FBI, I was an APD Police Officer and have been employed as a sworn officer for approximately seventeen years.

3.    I have specialized training and experience in investigations on all types of criminal acts, including the sales of narcotics.  During my tenure as a Police Officer, as well as an FBI TFO, I have conducted and participated in numerous investigations of criminal activity, specifically including narcotics trafficking and violent offenses committed by individuals.  I have investigated over 100 cases that involve the sale of narcotics, trafficking or narcotics, and felons in possession of firearms as an APD Officer.

1

## PURPOSE OF AFFIDAVIT

4.     This affidavit is made in support of a criminal complaint against, and arrest warrant for, ANTHONY EKNOCKEYWY HARRIS ("HARRIS") for a violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(viii) (Possession of More than 50 grams of Methamphetamine with Intent to Distribute), on or about September 1, 2022, in Orange County, California, within the Central District of California.

5.     The facts set forth in this affidavit are based upon information obtained from speaking with the Anaheim Police Officers involved in the arrest, as well as reading all police reports related to this matter under Anaheim Police Department ("APD") report number 22-138012.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and warrant, and does not purport to set forth all of my knowledge of, or investigation into, this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## STATEMENT OF PROBABLE CAUSE

6.     I have read APD police reports prepared by Officer T. Williams, Officer R. Lee, Officer A. Bratiloveanu, and Sgt. M. Lillemoen regarding the subject offense conduct.  As noted below, I have also reviewed lab reports issued by the DEA's Southwest Labortatory.  Based on these reports, I have learned the following facts.

2

A.   <u>**September 1, 2022: Police Observed HARRIS Selling**</u>
     <u>**Controlled Substances in Local Park**</u>

7.    On September 1, 2022, at about 12:30 p.m., Officers with the APD's Community Policing team were investigating numerous complaints made about various criminal offenses, including sales of narcotics, at La Palma Park, located at 1151 N. La Palma Park Way, in the City of Anaheim.  Sgt. Lillemoen was monitoring a camera that had been installed inside of the park due to the illegal activity that frequents there.  Officers observed several people sitting towards the north end of the park and, based on a prior narcotics investigation, immediately recognized one of the subjects as ANTHONY EKNOCKEYWY HARRIS ("HARRIS").

8.    A records check revealed that HARRIS had multiple prior arrests for sales of narcotics, including two cases by Anaheim PD officers, reference GO 19-149720 and GO 19-55938.  The records check also revealed that HARRIS had an active felony warrant for his arrest.  Officers were aware that HARRIS was on active Mandatory Supervision with Orange County Probation and the terms of his probation included a provision subjecting him and his property to search and seizure by law enforcement officers. Specifically, HARRIS signed a waiver in which he agreed to the following terms of search and seizure: "Submit your person and property including any residence, premises, container, or vehicle under your control, including electronic devices, to search and seizure at any time of the day or night by and law enforcement

officer, probation officer, or mandatory supervision officer with
or without a warrant, probable cause or reasonable suspicion."

9.    During the surveillance operation, Sgt. Lillemoen
observed HARRIS on the camera for about 30 minutes.  During that
time, Sgt. Lillemoen observed four hand-to-hand transactions
between HARRIS and other subjects at the park.  Based on the
surveillance observations of the suspected drug-sales, Officers
approached and attempted to detain the group of subjects,
including HARRIS, for loitering for drug activity, in violation
of Section 11352(a) of the California Health & Safety Code.

B.    **Discovery of Drugs, Drug-Trafficking Paraphernalia, and A**
      **Large Amount of Cash in HARRIS's Possession**

10.    Prior to the officers being able to detain the group,
HARRIS walked away from the group carrying several bags and a
backpack.  Officers Lee and Williams detained HARRIS a short
distance away from the group.

11.    After the officers made contact with HARRIS, Officer
Lee asked him if he had anything illegal on him, and HARRIS
replied that he did.  HARRIS admitted to having narcotics on his
person, and he also admitted to having additional methamphetamine
and fentanyl inside the bags that he was carrying.

12.    Officer Lee placed HARRIS under arrest based on the
outstanding arrest warrant.  Based on the probable cause that had
been established, a search incident to arrest, and an inventory
search prior to booking, Officers Lee and Williams conducted a
search of HARRIS's person and the multiple different bags that
HARRIS had been holding when he was detained, all of which he

4

identified as his belongings.  Officer Lee conducted the search of HARRIS's person and located the following items in his possession:

    a.   $25 in U.S. Currency, 2 plastics baggies containing marijuana (4 grams total), and a meth pipe with white residue on it, in HARRIS's front right pants pocket;

    b.   $1,305 in U.S. Currency in small bills, in HARRIS's front left pants pocket;

    c.   a wallet contained $14 in U.S. Currency, in HARRIS's right rear pocket.

    13.   Together with Officer Lee, Officer Williams conducted a search of HARRIS's multiple different bags and located the following items inside of the bags that HARRIS admitted were his:

    a.   a large plastic bag that contained suspected methamphetamine, with a gross weight of approximately 70 grams;

    b.   a black plastic bag with suspected fentanyl, with a gross weight of approximately 30 grams;

    c.   an operating digital scale;

    d.   eight small baggies with suspected narcotic residue inside; and

    e.   a large piece of white plastic paper consistent with material used to package narcotics.

14.   Additionally, Officers Lee and Williams located five black cell phones on the ground near HARRIS's bags.  HARRIS identified one of the cell phones (namely, a blue phone in a black case) as belonging to him and provided Officers with his cellular phone number.  The Officers booked all of the cell phones as evidence at the APD main station.

15.   Officer Lee also located 15 bank cards with different personal identifying information on them.  The cards were on the ground near HARRIS's property.  None of the cards were in HARRIS's name.  Based on his training and experience, Officer Williams noted in his report that the recovered personal identifying information and bank cards could be stolen, borrowed, sold, traded, or purchased for identity theft purposes.  From prior identity theft cases, as well as previous conversations with identity theft/fraud suspects, Officer Williams also knows that the recovered sensitive information could be used for obtaining property, goods, drugs, services, and financial gains by fraudulent means.

C.   **Mirandized Interview of HARRIS**

16.   Officer Lee read a Miranda Advisement to HARRIS, and HARRIS acknowledged all of his Miranda rights and agreed to waive those rights and speak with Officer Lee.  HARRIS told Officer Lee that he uses methamphetamine and fentanyl on a daily basis.  HARRIS admitted having approximately "an ounce and a half" of methamphetamine and a "piece" of fentanyl in his backpack.  HARRIS explained that a "piece" is slang for 30 grams of fentanyl.  HARRIS also admitted having marijuana in the same

6

backpack.  Consistent with the Officers' surveillance
observations, HARRIS admitted that he furnishes narcotics to
people in the park because he knows they are addicts, but he
denied selling drugs.  HARRIS claimed the currency in his
possession was from working a labor job.  He did not respond when
asked where he got the fifteen bank cards.

D.   **Interviews of HARRIS's Drug Customers**

17.   Officer Lee and Sgt. Lillemoen observed a narcotic
transaction occur between HARRIS and an individual named Shannon
Diiullo ("DIIULLO").  After the transaction was completed,
Officers were able to observe DIIULLO go to the Palm Motor Lodge
across the street from the park, located at 1101 N. Harbor Blvd.
Officer Lee knocked on Room 35 and spoke with DIIULLO.  DIIULLO
told Officer Lee that she had gone to La Palma Park and just
bought $20 worth of fentanyl from a black male subject she
referred to as "Ant" just prior to the officers contacting her.
She said Ant's real name was Anthony.  DIIULLO no longer had the
narcotics in her possession, but she was willing to show officers
her cellular phone that had text messages on it related to her
buying the narcotics.  The text message was to a phone number
that HARRIS had identified as being his phone number.  In the
message, DIIULLO asked HARRIS if he is at the park selling, and
HARRIS replied that he was.  HARRIS told her that she would need
to buy 2-3 days' worth of fentanyl because frequent sales could
get him arrested, and she agreed.

18.   When HARRIS walked away from the group in the park,
Officer Bratiloveanu and Officer Sarega were able to detain one

of the females, who was identified as Carmen Armijo ("ARMIJO"). ARMIJO was walking out of the park carrying several bags with her when she was detained. ARMIJO gave officers consent to search the bags in her possession. During the search, Officers located a plastic baggie with suspected fentanyl, and a small container with a crystal like substance that was suspected to be methamphetamine. Officer Bratiloveanu then read ARMIJO her <u>Miranda</u> Advisement verbatim, and ARMIJO acknowledged that she understood all of her rights. ARMIJO said she uses two grams of fentanyl a day. She also admitted the narcotics in her bag included methamphetamine as well as fentanyl. Ofc. Bratiloveanu asked her where does she get her narcotics from, and ARMIJO said "Anthony" provides her with the narcotics. ARMIJO said "Anthony" had dropped the methamphetamine on a blanket for her, and she had picked it up and walked away. ARMIJO said she is aware that HARRIS will charge $100 per gram of fentanyl to people he sells to, but she claimed that HARRIS will furnish the narcotics to her for free. ARMIJO was in possession of 0.70 grams gross of methamphetamine, and 0.8 grams gross of fentanyl.

**E.   Lab Analysis of Drug Evidence Seized from HARRIS**

19.   I collected the narcotics evidence that was found in HARRIS's possession during the above-described investigation and that had been booked into APD's evidence locker. I then had the drug evidence sent to the DEA's Southwest Laboratory to be weighed and analyzed.

20.   In one report, the DEA laboratory states that the suspected methamphetamine (identified as Exhibit 1B933) has a

8

total net weight of approximately 65 grams, with a 96% purity, and thus contained a total net weight of approximately 62 grams of actual/pure methamphetamine.  The report states that methamphetamine was identified in all of the units comprising Exhibit 1B933.

21.   In another report, the DEA laboratory states that the suspected fentanyl (identified as Exhibit 1B934) has a total net weight of approximately 14.5 grams.  The report notes that the substance p-Fluorofentanyl was also observed, but apparently in trace amounts as no weight is listed.  The report states that Fentanyl and p-Fluorofentanyl was identified in all of the units comprising Exhibit 1B934.

## CONCLUSION

22.   Based on all of the foregoing facts, I submit that there is probable cause to believe that ANTHONY EKNOCKEYWY HARRIS has committed a violation of Title 21, United States Code,

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

9

Sections 841(A)(1), (b)(1)(A)(viii), namely, Possession of More

than 50 grams of Methamphetamine with Intent to Distribute.

_____/s/_____

BRIAN BONCZKIEWICZ
Task Force Officer, FBI
Investigator, APD

Attested by the applicant by
telephone in accordance with
the requirements of Fed. R.
Crim. P. 4.1 on this day,
October _28_, 2022.

_____/s/ Autumn D. Spaeth_____
AUTUMN D. SPAETH
UNITED STATES MAGISTRATE JUDGE